**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PAUL KONOPKA,

     Plaintiff,

        v.

BOROUGH OF WYOMING, COUNCIL
FOR BOROUGH OF WYOMING,
WILLIAM RAGANTESI, Individually and in
his Official Capacity as Assistant Chief of
Police for the Borough of Wyoming, ALEX
BURDA, Individually and in his Official
Capacity as Police Officer for the Borough
of Wyoming, CHRISTOPHER
MERCAVICH, Individually and in his
Official Capacity as Police Officer for the
Borough of Wyoming, JOSEPH
SCROBOLA, Individually and in his
Official Capacity as Councilman for the
Borough of Wyoming, and JOSEPH
SCROBOLA, t/d/b/a TS ALARM
COMPANY,

     Defendants.

CIVIL ACTION NO. 3:03-CV-894

(JUDGE CAPUTO)

## MEMORANDUM

     Presently before the Court is Motion For Summary Judgment (Doc. 25) filed by

Defendants Borough of Wyoming ("Borough"), Council for the Borough of Wyoming

("Borough Council"), William Ragantesi, Individually and in his Official Capacity as

Assistant Chief of Police for the Borough of Wyoming, Alexa Burda, Individually and in

his Official Capacity as Police Officer for the Borough of Wyoming, Joseph Scrobola,

Individually and in his Official Capacity as Councilman for the Borough of Wyoming, and

Joseph Scrobola, t/d/b/a TS Alarm Company.  For the reasons set forth below, the Court

will grant Defendants' motion in part and deny Defendants' motion in part.  The Court has

jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

## BACKGROUND

Plaintiff Paul Konopka is the Wyoming Borough Tax Collector.  Defendant William Ragantesi is the Assistant Chief of the Wyoming Borough Police Department.  Defendant Alex Burda is an officer with the Wyoming Borough Police Department.  Defendant Scrobola is a member of the Borough Council.

In 1984, Plaintiff was appointed Tax Collector to fill a one year vacancy.  (Doc. 26 ¶ 2; Doc. 35 ¶ 2.)  In 1985, Plaintiff was elected to the position and has held the office for over twenty years.  (Doc. 28, Ex. 26 at 15.)  As Tax Collector, Plaintiff's duties include sending out the taxes, collecting tax revenue, and distributing funds to the school, county and the Borough.  (Doc. 26 ¶ 15; Doc. 35 ¶ 15.)  The Tax Collector's office is located in the Wyoming Borough Building ("Borough Building") in Wyoming, Pennsylvania.  (Doc. 26 ¶ 17; Doc. 35 ¶ 17.)  Plaintiff shares this office with the Borough Manager.  (Doc. 26 ¶ 18; Doc. 35 ¶ 18.)  This office contains two desks, two filing cabinets and two computers. (Doc. 26 ¶ 21; Doc. 35 ¶ 21.)  Plaintiff submitted evidence that he owned the desk which he used in the office.  (Doc. 28, Ex. 26 at 41.)  Members of the Wyoming Borough Police Department, members of the Borough Council, zoning officials, the Borough Treasurer and others also use the office and desks shared by Plaintiff and the Borough Manager. (Doc. 26 ¶ 22; Doc. 35 ¶ 22.)  Plaintiff submitted evidence that although other individuals were permitted to use the top of his desk, they were not supposed to use the drawers. (Doc. 28, Ex. 26 at 40, 43-45.)  Plaintiff submitted evidence that the drawers of the desk were kept locked until the locks were broken.  (Doc. 28, Ex. 26 at 40.)

On February 28, 2001, Plaintiff's office was relocated to the garage of the Borough

Building.  (Doc. 26 ¶ 27; Doc. 35 ¶ 27.)  Plaintiff submitted evidence that this decision was made unilaterally by Defendant Scrobola, but was later ratified by the Borough Council.  (Doc. 28, Ex. 36 at 11-13.)  After Plaintiff complained about the relocation, the Borough Council voted to remove Plaintiff's office from the Borough Building entirely. (Doc. 26 ¶ 30; Doc. 35 ¶ 30.)  Thereafter, Plaintiff initiated a lawsuit in the Luzerne County Court of Common Pleas seeking reinstatement of his office to its original locale. (Doc. 26 ¶ 31; Doc. 35 ¶ 31.)  On July 2, 2001, Judge Peter Olszewski, Jr. ordered the Borough to reinstate Plaintiff's office.  (*Id.*)

After Plaintiff moved back into the office in the Borough Building, his desk was vandalized by unknown parties.  (Doc. 26 ¶ 32; Doc. 35 ¶ 32.)  On July 6, 2001, checks were stolen from the desk of Karen Pokorny, Borough Manager.  (Doc. 26 ¶ 33; Doc. 35 ¶ 33.)  Plaintiff submitted evidence that Defendant Scrobola had accused him of stealing the checks.  (Doc. 28, Ex. 26 at 58.)  Several days later, Defendant Scrobola accused Plaintiff of sending him a threatening letter.  (*Id*.)  Shortly after these incidents, Defendant Scrobola installed a surveillance camera in Plaintiff's office.  (Doc. 26 ¶ 38; Doc. 35 ¶ 38.) The surveillance camera was trained only on Plaintiff's desk.  (Doc. 39, Exs. 8-10.)  The surveillance tapes do not show the door to the office shared by the Tax Collector and Borough Manager; nor do they show Karen Pokorny's desk.  (*Id*.)  At the time the surveillance camera was installed, only Defendants Scrobola and Mercavich knew about it.  (Doc. 26 ¶40-41; Doc. 35 ¶ 40-41.)

Plaintiff submitted evidence that he had complained about the vandalism of his desk, but that no action was taken.  (Doc. 28, Ex. 26 at 59.)  Determined to discover who was responsible, Plaintiff installed a voice-activated tape recorder in his desk.  (Doc. 28,

3

Ex. 26 at 74, 161.)  This occurred on August 30, 2001.  (Doc. 26 ¶ 43; Doc. 35 ¶ 43.)

The following day a party was held in the office shared by Plaintiff and Karen Pokorny.

(Doc. 26 ¶ 45; Doc. 35 ¶ 45.)  It is undisputed that following the party, Defendant

Ragantesi opened the drawer to Plaintiff's desk and discovered the tape recorder.  (Doc.

26 ¶48; Doc. 35 ¶ 48.)  The parties dispute why the drawer was opened in the first place.

Plaintiff submitted evidence that Defendant Ragantesi has offered conflicting

explanations for opening the drawer to Plaintiff's desk.  (Doc. 26, Ex. 28 at 57-58.)

Following the discovery of the tape recorder, Defendant Ragantesi handed the

device over to Defendant Burda.  (Doc. 26 ¶ 51; Doc. 35 ¶ 51.)  Defendant Burda then

commenced an investigation.  (*Id.*)  In the course of the investigation, Defendant Burda

listened to the audio tape and discovered that the device had in fact intercepted the oral

communications of eight individuals.  (Doc. 26 ¶ 57; Doc. 35 ¶ 57.)  Plaintiff was then

brought in for questioning and was subsequently charged with eight counts of

Interception, Disclosure or Use of Wire, Electronic or Oral Communications in violation of

section 5704(1) of title 18 of the Pennsylvania Consolidated Statutes.  (*Id.*)

After a preliminary hearing, the charges against Plaintiff were bound over for trial.

(Doc. 26 ¶ 63; Doc. 35 ¶ 63.)  Plaintiff then applied for enrollment in the Accelerated

Rehabilitative Disposition ("ARD") program.  (Doc. 26 ¶ 66; Doc. 35 ¶ 66.)  Thereafter,

the Luzerne County District Attorney's Office determined that Plaintiff was eligible to

participate in the ARD program.  (Doc. 26 ¶ 68; Doc. 35 ¶ 68.)  As a part of the process,

the victims of Plaintiff's crime were contacted so that they could object to his participation

in the program if they so desired.  (Doc. 28, Ex. 21.)  Plaintiff presented evidence that

Defendant Scrobola objected to Plaintiff's participation.  (*Id.*)  Plaintiff also submitted

evidence that Defendant Scrobola wanted Plaintiff to be banned from holding public office for a period of five years as a condition of his participation in the ARD program. (*Id.*)  The evidence indicates that this condition was never ratified by the Luzerne County District Attorney's Office.  (Doc. 28, Ex. 20.)

Plaintiff initiated this civil action on May 29, 2003, alleging violations of 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the state law claims of invasion of privacy and abuse of process.  (Doc. 1.)  Defendants Borough, Borough Council, Ragantesi, Burda and Scrobola filed the instant motion on January 31, 2005.  (Doc. 25.)  The matter is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of

5

proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

**1)      Section 1985(1)**

The Complaint alleges that Defendants engaged in a conspiracy in violation of 42 U.S.C. § 1985(1).  Defendants correctly point out, and Plaintiff concedes, that § 1985(1) is applicable only where there is an alleged conspiracy to interfere with a federal officer's performance of his official duties.  *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 423 n.1 (3d Cir. 2003).  Accordingly, the Court will grant Defendants' motion with respect to Plaintiff's § 1985(1) claim.

Plaintiff attempts, however, to amend his pleading to allege a conspiracy amongst Defendants to violate § 1983.  Plaintiff may not attempt to add claims via a brief in opposition to a motion for summary judgment.  *Dominic J. v. Wyoming Valley West High Sch.*, 362 F. Supp. 2d 560, 571 n.3 (M.D. Pa. 2005).  Nonetheless, the Court will proceed with a discussion of Plaintiff's allegation of the existence of a conspiracy due to the fact that Plaintiff premises the liability of a number of Defendants on their involvement in the alleged conspiracy.

"To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'"  *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)), *abrogated on other grounds, United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392 (3d Cir. 2003).  Plaintiff has failed to submit evidence from which a reasonable fact-finder could conclude that Defendants entered into an agreement to violate Plaintiff's

7

constitutional rights.  The absence of the agreement dooms Plaintiff's allegations

regarding the existence of a conspiracy to violate Plaintiff's constitutional rights.

**2)      Section 1983**

The Complaint alleges that Defendants violated Plaintiff's constitutional rights

in violation of 42 U.S.C. § 1983.  In order to state a claim under § 1983, Plaintiff must

have been deprived of a federally protected right by someone acting under color of state

law.  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Parrat v. Taylor*, 451 U.S. 527, 535

(1981)).  The absence of a state actor or a constitutional harm will result in the failure of

Plaintiff's § 1983 claim.  *See id.*  While there is no dispute that Defendants qualify as

state actors, Defendants have asserted various other grounds for summary judgment.

The Court will address each of these arguments in turn below.

**A)      *Monell* Liability**

Defendants Borough and Borough Council have moved for summary judgment on

the basis that Plaintiff has failed to establish municipal liability pursuant to *Monell v.*

*Department of Social Services,* 436 U.S. 658 (1978). Plaintiff argues that he has

established the liability of the Borough and the Borough Council pursuant to § 1983

because the Borough Council "had an established policy of letting Defendant Scrobola

take actions without approval of council" and later ratifying Defendant Scrobola's actions

through official channels.  (Doc. 34 at 87.)  Plaintiff further argues that other examples of

Defendant Scrobola practice of acting unilaterally "establishes a municipal policy of

allowing [Defendant] Scrobola unfettered authority to make unilateral decisions."  (*Id.*)

Plaintiff concludes that in light of the authority allegedly bestowed upon Defendant

Scrobola, the Borough and Borough Council are liable for his conduct. (*Id.*)  The Court disagrees.

As municipal entities, Defendants Borough and Borough Council may only be held liable for the alleged constitutional infractions perpetrated upon Plaintiff if "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  The requisite causal link may be shown in two ways.  First, where the municipal entity is alleged to have caused the violation of the aggrieved parties' constitutional rights through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001) (quoting *Monell*, 436 U.S. at 690).  It is of note that the policy of a municipality can be created by the conduct of an individual with final, unreviewable policy making authority. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).   The second manner in which a party may demonstrate the requisite causal link is by demonstrating that the alleged constitutional violations were caused by a custom or usage of the municipality which has "the force of law by virtue of the persistent practices of [municipal] officials." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167 (1970).

In the instant matter, the record is bereft of any evidence that the alleged constitutional violations perpetrated upon Plaintiff by the individual defendants were pursuant to a policy or custom of the Borough or Borough Council.  Although there is evidence that Defendant Scrobola acted unilaterally with respect to the operations of the Borough, and that the Borough Council often later ratified his actions (Doc. 39, Ex. 1 at 7

& 13), there is no evidence that he has final and unreviewable policy making authority. Therefore, his conduct alone cannot be said to be that of the Borough or Borough Council.  Moreover, even if there was a policy or custom whereby Defendant Scrobola was permitted to act unilaterally, it was not the policy which caused the alleged constitutional deprivation.  Rather, it was the alleged course of conduct that Defendant Scrobola undertook on his own initiative.  In viewing the evidence in the light most favorable to Plaintiff, the Court finds that no reasonable fact-finder could conclude that Defendant Scrobola was acting pursuant to a Borough or Borough Council policy.   It is important to point out that Plaintiff's arguments are steeped in the common law principle of *respondeat superior*.  However, this principle is simply inapplicable in a § 1983 action. *See, e.g., Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985).  In light of the foregoing, the Court will grant Defendants' motion with respect to Plaintiff's § 1983 claims against the Borough and Borough Council.  Moreover, because a claim against a municipal official in his or her official capacity is simply a claim against the municipality, *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988), Defendants are entitled summary judgment on all of Plaintiff's § 1983 claims against them in their official capacities.

   **B)    Qualified Immunity**

   Defendants Ragantesi, Burda, and Scrobola have moved for summary judgment on the basis that they are entitled to qualified immunity for the alleged violations of Plaintiff's constitutional rights.  The doctrine of qualified immunity provides "government officials performing discretionary functions . . . [a shield] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

10

rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  As noted by the Third Circuit Court of Appeals, "The primary purpose of affording public officials the privilege of qualified immunity, thus insulating them from suit, is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005) (quoting *Elder v. Holloway*, 510 U.S. 510, 514 (1994)).  To determine whether a particular defendant is entitled to the protections of qualified immunity, the Court must first determine whether a constitutional violation has occurred.  *Doe v. Groody*, 361 F.3d 232, 237 (3d Cir. 2004); *see also Wright v. City of Philadelphia*, 409 F.3d 535, 600 (3d Cir. 2005) (noting that six Courts of Appeals have ruled that first step in qualified immunity analysis is whether a constitutional violation has occurred).  The Court must then determine if the constitutional right at issue was clearly established at the time of the alleged violation.  *Groody,* 361 F.3d at 237.  In accordance with this formulation, the Court turns to the task of determining whether Plaintiff submitted evidence from which a reasonable fact-finder could conclude that a constitutional violation occurred.

### i)      Malicious & Retaliatory Prosecution

Defendants argue that Plaintiff has failed to submit evidence supporting his claim of malicious or retaliatory prosecution.  In order to establish a claim of malicious or retaliatory prosecution under § 1983, Plaintiff must demonstrate that criminal proceedings were initiated without probable cause, that he suffered a deprivation of a liberty, and that there was a termination or reversal of the criminal proceedings by reason of his innocence.  *Backof v. New Jersey State Police*, 92 Fed. Appx. 852, 856 (3d Cir. 2004).

11

In the wake of the Supreme Court's holding in *Albright v. Oliver*, 510 U.S. 266 (1994), the Third Circuit Court of Appeals has unequivocally stated that a claim of malicious prosecution may be based on a liberty interest protected by the Fourth Amendment or some other provision of the constitution, provided its not based on the substantive component of the Due Process Clause. *See, e.g., Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000); *Torres v. McLaughlin*, 163 F.3d 169, 173 (3d Cir. 1998).

In the instant matter, Plaintiff predicates his malicious and retaliatory prosecution claims on the First and Fourth Amendment.  While it appears unsettled whether Plaintiff must submit evidence that satisfies the elements of the traditional common law cause of action for malicious prosecution, *Merkle*, 211 F.2d at 792, a finding of probable cause will defeat Plaintiff's claim regardless of the constitutional provision under which he proceeds. *Wright*, 409 F.3d at 604 (finding of probable cause defeats malicious prosecution claim premised on violation of the Fourth Amendment); *Merkle*, 211 F.2d at 794-95 (determining whether the defendant had probable cause to initiate prosecution in the context of malicious prosecution claim predicated upon First Amendment retaliation); *see also Backof* , 92 Fed. Appx. at 856 ("At a minimum, a plaintiff must allege . . .an absence of probable cause for initiation of the criminal proceedings.")

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  Although the presence of probable

12

cause is most often regarded as a question for the jury in a civil action brought pursuant to § 1983, the Court is permitted to "conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorable to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly." *Merkle*, 211 F.2d at 789 (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

Here, it is undisputed that Plaintiff engaged in a course of conduct whereby he surreptitiously recorded eight individuals by placing a voice activated tape recorder in his desk located in an office, which he shared with the Borough Manager. (Doc. 26 ¶ 43; Doc. 35 ¶ 43.)  Although the parties dispute the means and methods by which the tape recorder was discovered, it is undisputed that Defendant Ragantesi discovered the tape recorder on August 31, 2001. (Doc. 26 ¶ 48; Doc. 35 ¶ 48.)  Moreover, it is undisputed that Defendant Ragantesi handed the tape recorder over to Defendant Burda, that Defendant Burda conducted the investigation into the tape recorder, and that the tape recorder did in fact contain recordings of eight people.  *See infra* p. 4.  In light of the foregoing, the Court finds that no reasonable fact-finder could conclude that Defendant Burda lacked probable cause to initiate criminal proceedings against Plaintiff.

The Court notes that Plaintiff takes exception to the manner in which the tape recorder was discovered.  Plaintiff argues that there was no probable cause to search the desk.  The issue with regard to the instant claim is not whether Defendants had probable cause to search Plaintiff's desk, but rather, whether there was probable cause to initiate criminal proceedings against him.  Moreover, assuming *arguendo* that the search of Plaintiff's desk was unconstitutional and done in bad faith, Plaintiff would only be entitled to recover damages directly related to the alleged "invasion of privacy -- including (where

appropriate) damages for physical injury, property damage, injury to reputation, etc.; but . . . [Plaintiff] cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2001) (quoting *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999).  While the fruits of the allegedly illegal search may be inadmissible in criminal proceedings under the exclusionary rule, the illegality of said search does not vitiate the existence of probable cause in relation to the Court's analysis in the matter presently before it.

Plaintiff also seeks to overcome the existence of probable cause by pointing to discrepancies in the testimony of Defendants.  In order to do so, Plaintiff has the burden of showing that Defendants knowingly and deliberately or with reckless disregard for the truth, made false statements which were material to the finding of probable cause. *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000).  The Court finds that Plaintiff has submitted evidence that Defendant Ragantesi made contradictory statements regarding the discovery of the tape recorder.  (Doc. 26, Ex. 28 at 57-58.)  However, in light of the undisputed evidence of Plaintiff's criminal activity, the Court finds that any misrepresentations Defendant Ragantesi may have made regarding the discovery of the tape recorder, were not material to the finding of probable cause.  Such a minor taint in the affidavit of probable cause does not eliminate the existence of probable cause. Because of the absence of a constitutional violation, the Court need not proceed further in determining whether Defendants are entitled to qualified immunity on Plaintiff's malicious and retaliatory prosecution claims.  Therefore, the Court will grant Defendants'

motion with respect to Plaintiff's malicious and retaliatory prosecution claims.

### ii)      False Arrest

Defendants also argue that Plaintiff has failed to submit evidence of illegal or false arrest.  The Fourth Amendment of the United States Constitution proscribes searches and seizures, including arrests, without probable cause.  *Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).  Assuming hypothetically that Plaintiff was in fact seized within the meaning of the Fourth Amendment, as noted in the preceding section, probable cause to effectuate said hypothetical seizure existed.  *See infra* p. 13.  Moreover, even if Plaintiff had been subjected to an illegal search, that fact alone simply does not vitiate the existence of probable cause; nor does Defendant Ragantesi's inconsistent statements.  *See infra* p. 14.  Because of the absence of a constitutional violation, the Court need not proceed further in determining whether Defendants are entitled to qualified immunity on Plaintiff's false arrest claim.  Therefore, the Court will grant Defendants' motion with respect to this claim.

### iii)      Access to Courts

Defendants argue that Plaintiff has failed to submit evidence supporting his claim that he was denied access to the courts in violation of his constitutional rights.  The existence of a constitutional right to effective use of this nation's courts has been recognized by the Supreme Court "in the Article IV Privileges and Immunities Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses."  *Gibson v. Superintendent of N.J. Dept. of Law & Pub. Safety Div. of State Police,* No. 04-1487, 2005 U.S. App. Lexis 11150, at *32 (3d Cir. June 14,

2005).  Denial of access claims fall into one of two categories.  The first type involves a claim that "some official action is currently preventing the plaintiff from filing a suit at the present time."  *Id.* at *33.  The second type involves allegations that "some past wrongful conduct influenced a litigation opportunity such that the litigation 'ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable.'"  *Id.* (quoting *Christopher v. Harbury*, 536 U.S. 403, 414 (2002)).

In the instant matter, Plaintiff alleges that Defendants have frustrated his right to access the courts by suppressing evidence which would have enabled him to establish that he had been subjected to an illegal search during his state criminal proceedings. (Doc. 1 ¶¶ 101-15.)  However, a denial of access claim which involves an official's suppression of evidence that is material to a criminal proceeding may not be brought until the conviction is invalidated.  *See id.* at 34.  Despite Plaintiff's best efforts to distinguish his case, a finding by this Court that Defendants wrongfully suppressed evidence during the state criminal proceedings would impermissibly imply the invalidity of the resolution of those proceedings.  Moreover, as discussed below, even if Plaintiff were permitted to bring the instant denial of access claim, Defendants would still be entitled to summary judgment.

Plaintiff purports to have submitted evidence that the surveillance tapes turned over in discovery during the pendency of Plaintiff's criminal proceedings were tampered with.  (Doc. 34 at 69; *see also* Doc. 39, Exs. 8-10.)  In addition, Plaintiff alleges that Defendants either removed the video cassette tape from the video cassette recorder ("VCR") or erased the contents of the tape.  (Doc. 34 at 69.)  Assuming *arguendo* that the

16

video cassettes in evidence do in fact reveal that they were tampered with, aside from Plaintiff's assertion, he has submitted absolutely no evidence from which a reasonable fact-finder could conclude that Defendants Ragantesi, Burda, or Scrobola were involved in the alleged tampering or removal of the video cassette from the VCR.  As Plaintiff's denial of access to courts claim rests solely on his allegations regarding the video cassette, the Court finds that no reasonable fact-finder could deduce from the evidence in the record that Defendants Ragantesi, Burda, or Scrobola denied Plaintiff access to the courts in violation of his constitutional rights.  Accordingly, the Court need not proceed further in its determination of whether Defendants Ragantesi, Burda, and Scrobola are entitled to qualified immunity on this claim.  The Court will grant Defendants' motion with respect to this claim.[1]

### iv)    Fourteenth Amendment: Substantive Due Process

It is by now well settled that the substantive component of the Due Process Clause of the Fourteenth Amendment affords protection to certain zones of privacy.  There are two clearly identifiable zones of privacy which have been afforded protection:  (1) one's interest in avoiding the disclosure of personal matters; and (2) the right to autonomy and independence in personal decision-making.  *Whalen v. Roe,* 429 U.S. 589, 599-600

---

[1]    The Court notes that in his brief in opposition, Plaintiff attempts to argue that Defendants interfered with his right to access with respect to the instant civil action.  The Complaint does include this allegation.  As noted previously, Plaintiff may not attempt to add claims via a brief in opposition to a motion for summary judgment.  *Dominic J.*, 362 F. Supp. 2d at 571 n.3.  Moreover, even if the Court were to permit such an amendment, the claim would still fail due to the utter lack of evidence that Defendants Ragantesi, Burda or Scrobola were in any way involved in the alleged tampering with the video cassettes.

(1977).   As noted by the Third Circuit Court of Appeals, "Cases in the latter category describe the liberty interests in matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Doe v. Delie*, 257F.3d 309, 317 n.5 (3d Cir. 2001).

Defendants Ragantesi, Burda, and Scrobola argue that Plaintiff has failed to submit evidence that they disclosed any personal information regarding Plaintiff or that they interfered with his personal autonomy in a manner previously recognized as proscribed by the substantive component of the Due Process Clause.   The Court agrees. There simply is no evidence in the record from which a reasonable fact-finder could conclude that Defendants Ragantesi, Burda, or Scrobola disclosed any personal information, sensitive or otherwise, regarding Plaintiff.   Similarly, the record also lacks any evidence that Defendants Ragantesi, Burda, or Scrobola interfered with Plaintiff's personal autonomy.

Plaintiff, however, argues that the Third Circuit Court of Appeals has recognized the common law privacy tort of intrusion upon seclusion as part and parcel of the right of privacy, thus falling within the scope of the protection of the Due Process Clause.   A careful reading of the cases relied upon by Plaintiff reveals that his argument simply has no foundation in the law of the this circuit.   In both *Bartnicki v. Vopper*, 200 F.3d 109 (3d Cir. 1999), and *Fultz v. Gilliam*, 942 F.2d 396, 401 (6th Cir. 1991), the courts were referring to the scope of the common law right to privacy in the context of federal and state wiretap laws, including the tort of intrusion upon seclusion.   The courts were not including intrusion upon seclusion in the zone of privacy protected under the United

States Constitution.

In light of the lack of evidence that Defendants Ragantesi, Burda, and Scrobola violated Plaintiff's rights protected by the substantive component of the Due Process Clause, the Court need not proceed further in determining whether Defendant Scrobola, Ragantesi and Burda are entitled to qualified immunity with respect to this claim. Accordingly, the Court will grant Defendants' motion with respect to Plaintiff's substantive due process claim.

### v)    Fourth Amendment:  Illegal Search and Seizure

Defendants Ragantesi, Burda, and Scrobola first argue that only Defendant Ragantesi can be held liable for a violation of the Fourth Amendment because he is the only one who searched Plaintiff's desk.  As noted above, there simply is not sufficient evidence in the record supporting a claim of conspiracy.  *See infra* p. 7-8.  Consequently, the Court finds that Defendants Burda and Scrobola did not conspire with Defendant Ragantesi to search Plaintiff's desk.  Notwithstanding the lack of evidence of a conspiracy, it is clear that Defendant Burda received the tape recorder from Defendant Ragantesi and commenced a search of the contents of the tape contained therein by listening to the tape.[2]  Accordingly, the Court finds that Defendants Ragantesi and Burda both may be held liable for a violation of the Fourth Amendment as there is evidence that each participated in a search of Plaintiff's property.  Having found that Plaintiff at least

---

[2]      The Court notes that while the Fourth Amendment proscribes both unreasonable searches and seizures, U.S. Const. amend. IV, both the Complaint (Doc. 1) and Plaintiff's Brief In Opposition (Doc. 34) complain only of an illegal search.

states a claim against Defendants Ragantesi and Burda, the Court must address

Defendants' second argument that Plaintiff has failed to submit sufficient evidence of a

violation of the Fourth Amendment with respect to each.

### 1)      Defendant Ragantesi

Defendants argue that there has been no constitutional violation because Plaintiff

did not have a reasonable expectation of privacy in the contents of his desk.  Defendants

further argue that because the office is controlled by the Borough, any expectation of

privacy held by Plaintiff was not reasonable.  Finally, Defendants argue that because of

the operational realities of Plaintiff's office, Plaintiff cannot be said to have a reasonable

expectation of privacy in the contents of his desk.  The Court finds no merit to

Defendants' arguments.

Defendants appear to rely on *O'Connor v. Ortega*, 480 U.S. 709 (1987), in support

of their argument that Plaintiff did not have an expectation of privacy in the contents of

his desk.  However, the plurality in *O'Connor* determined that the aggrieved party had an

expectation of privacy with respect to the contents of his desk despite the fact that he

was a public employee.  *Id.* at 719.  Nonetheless, contrary to the assertion of Plaintiff,

such a determination must be made on a case-by-case basis.  *Id.* at 718.  Moreover,

simply because the Borough owned, controlled and managed the office where Plaintiff's

desk was located does not deprive him of a reasonable expectation of privacy in the

contents of the desk.  Nor does the fact that the office was shared with other individuals.

In *Mancusi v. DeForte*, 392 U.S. 364 (1968), the Supreme Court held that the defendant

had a reasonable expectation of privacy at his place of business despite the fact that he:

(1) did not own the space which was subjected to a search; and (2) shared the office space with other individuals.  *See id.* at 369.  The Court further held that a search by state officials who were neither the employee's supervisor nor his employer defeated this expectation.  *Id.*  Finally, while it is certainly true that the Supreme Court held that the "operational realities of the workplace . . . make *some* employees' expectations of privacy unreasonable when an intrusion is by a supervisor rather than a law enforcement official," *O'Connor*, 480 U.S. at  717, the case *sub judice* does not involve an analogous intrusion.

Unlike *O'Connor,* which involved the search of a state employee's office, desk and filing cabinets by individuals acting at the behest of the employee's government employer, the evidence presently before the Court indicates that a law enforcement official, namely Defendant Ragantesi*,* committed the intrusion.  (Doc. 26 ¶ 48; Doc. 35 ¶ 48.)  Moreover, there is no evidence of any employment relationship between Defendant Ragantesi and Plaintiff.  While there is evidence that other individuals used Plaintiff's desk and that some supplies purchased by the Borough were stored inside the desk (Doc. 26 ¶ 22; Doc. 28, Ex. 26 at 46; Doc. 35 ¶ 22), Plaintiff has submitted evidence that only he was authorized to use the drawers of the desk, that the drawers of the desk were previously kept locked, and the other individuals who made use of the desk were only permitted to use the top of the desk.  (Doc. 28, Ex. 26 at 40, 43-45.)  In light of the foregoing, the Court finds that a reasonable fact-finder could conclude that Plaintiff had a reasonable expectation of privacy in the contents of his desk.

Having found that a reasonable fact-finder could conclude that Plaintiff had a reasonable expectation of privacy in the contents of his desk, the Court turns to a

determination of whether the intrusion was reasonable.  Evaluation of the

reasonableness of an intrusion is the fundamental task of any Fourth Amendment

analysis.  *United States v. Sczubelek*, 402 F.3d 175, 182 (3d Cir. 2005).  A determination

of whether a search is reasonable "depends on all of the circumstances surrounding the

search . . . and the nature of the search . . . itself."  *Id.* (internal quotations and citations

omitted).  In rendering such a determination, the Court faces the task of balancing "'on

the one hand, the degree to which [the search] intrudes upon an individual's privacy and,

on the other hand, the degree to which [the search] is needed for the promotion of

legitimate governmental interests.'"  *Id.* (quoting *United States v. Knights*, 534 U.S. 112,

118 (2001)).  A warrantless search is generally presumed to be unreasonable.  *Parkhurst*

*v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996).  Nonetheless, while authorization of a search

by either proper consent or a valid search warrant is often regarded as the touchstone of

reasonableness, *O'Connor*, 480 U.S. at 720, there are numerous exceptions to this rule,

*see, e.g., Groh v. Ramirez*, 540 U.S. 551, (2004) (Thomas, J., dissenting), as well as

scenarios under which the Supreme Court has held that the probable cause or warrant

requirement would frustrate the very purpose for the government's search, *Vernonia Sch.*

*Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995); *New Jersey v. T.L.O.*, 469 U.S. 325, 341

(1985).

        In the instant matter, there is no evidence that Defendant Ragantesi had a

warrant.  In addition, the record lacks any evidence which would indicate that Defendant

Ragantesi had probable cause to intrude into Plaintiff's desk.  Moreover, in viewing the

evidence in the light most favorable to Plaintiff the intrusion at issue does not qualify as a

special circumstance where probable cause or a warrant requirement would frustrate the

purpose behind the search.  Even if the Court were to apply a general reasonableness

standard, the explanation offered by Defendants is called into question by the fact that

Defendant Ragantesi has given inconsistent explanations as to why he opened the

drawer to Plaintiff's desk.  (Doc. 26, Ex. 28 at 57-58.)  Moreover, Defendants have

offered no other legitimate governmental interests furthered by the intrusion.  Therefore,

the Court finds that a reasonable fact-finder could conclude from the evidence in the

record that Defendant Ragantesi's invasion of Plaintiff's reasonable expectation of

privacy was unreasonable in violation of the Fourth Amendment.  Accordingly, the Court

finds that Plaintiff has submitted sufficient evidence from which a reasonable fact-finder

could conclude that Defendant Ragantesi violated Plaintiff's Fourth Amendment rights.

Having determined that the record contains evidence from which a reasonable

fact-finder could conclude that Defendant Ragantesi violated Plaintiff's Fourth

Amendment Rights, that Court must determine whether "this violation transgressed

'clearly established' rights." *Groody*, 361 F.3d at 243.  As noted recently by the Supreme

Court the "contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right." *Brosseau v. Haugen*, --- U.S. ---,

125 S. Ct. 596, 599 (2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Thus, the Court must determine whether a reasonable official would understand that the

Fourth Amendment proscribes intrusions into a desk, in which an individual has a

reasonable expectation of privacy, without a legitimate governmental interest.  The Court

finds that a reasonable official would have.

As noted above, the Fourth Amendment proscribes unreasonable searches. *Berg*, 219 F.3d at 269.  It is well settled that this proscription extends to the workplace even where the individual shares his office and does not own the premises on which the office is located.  *O'Connor*, 480 U.S. at 719.  Finally, it is also settled that a search by law enforcement which furthers no legitimate governmental purpose is not reasonable. *See Sczubelek*, 402 F.3d at 182.  Accordingly, the Court finds that the right at issue was clearly established at the time of Defendant Ragantesi's actions.  Consequently, Defendant Ragantesi is not entitled to qualified immunity.  The Court will deny Defendants' motion with respect to Plaintiff's Fourth Amendment claim against Defendant Ragantesi.

### 2)    Defendant Burda

With respect to Defendant Burda, Plaintiff argues that "the search that included the opening of the audiocassette recorder and the listening of the contents of the tape without seeking a warrant" constitutes a violation of the Fourth Amendment.  (Doc. 34 at 52.)  The listening to the tape may constitute a search; however, the opening of the "deck" of the tape recorder does not.  Moreover, as the Court noted in the preceding section, Plaintiff submitted sufficient evidence from which a reasonable fact-finder could conclude that he had a reasonable expectation of privacy in the contents of his desk. *See infra* pp. 20-22.  This would necessarily include the tape.  That Plaintiff allegedly procured the contents of the tape illegally is of little consequence.

Turning next to the reasonableness of the search, the Court notes that neither party briefed the issue of whether the search of the tape was reasonable, which, as noted

above, is central to the Court's determination of whether Plaintiff's Fourth Amendment rights were violated. *See infra* pp. 21-22.  It is certainly plausible that a reasonable fact-finder could conclude that Defendant Burda had probable cause to listen to the tape and listened to the tape pursuant to the advice of the Luzerne County District Attorney's Office.  However, it is just as plausible that a reasonable fact-finder could conclude that Defendant Burda's search of the tape was not reasonable because:  (1) Defendant Burda did not have a warrant; (2) there is no evidence indicating that a warrantless search was necessitated by the presence of exigent circumstances; and (3) there is no evidence that the search falls under one of the exceptions to the warrant requirement.  *See infra* p. 22.  Therefore, the Court finds that a reasonable fact-finder could conclude that Defendant Burda violated Plaintiff's constitutional rights by listening to the tape discovered by Defendant Ragantesi.

Finally, turning to the inquiry of whether the right at issue was clearly established, the Court finds that it was.  A reasonable official simply cannot argue that he was unaware of the Fourth Amendment's proscription of searches that defeat an individual's reasonable expectation of privacy absent a warrant, exigent circumstances, or some other exception.  Accordingly, Defendant Burda is not entitled to qualified immunity.  The Court will deny Defendants' motion insofar as it seeks summary judgment on Plaintiff's Fourth Amendment claim against Defendant Burda.

### vi)      First Amendment:  Retaliation

Defendants argue that Plaintiff has failed to submit evidence from which a reasonable fact-finder could deduce that Defendants retaliated against Plaintiff in

25

violation of the First Amendment.  First Amendment retaliation claims are analyzed under

the burden-shifting framework set forth in *Mount Healthy Board of Education v. Doyle*,

429 U.S. 274 (1977).  *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 144 (3d Cir.

2000)*; Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997).  Under this analytical

framework, Plaintiff must first establish that he engaged in an activity protected by the

First Amendment.  *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004).

Plaintiff must then submit competent evidence that Defendants responded with some

adverse action.  *Id.*  Plaintiff may satisfy this element upon proof that " the alleged

retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising

his First Amendment rights. "  *Allah v. Seiverling*, 229 F.3d 220, 235 (3d Cir. 2000)

(internal quotation omitted).  Finally, Plaintiff must submit evidence of a causal link

between the protected activity and Defendants' retaliatory conduct, *Eichenlaub,* 385 F.3d

at 282; *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001), by demonstrating that

Plaintiff's protected activity was a substantial or motivating factor in Defendants' decision

to perpetrate the adverse action upon Plaintiff.  *Nicholas*, 227 F.3d at 144.  Upon

satisfaction of Plaintiff's burden, the burden shifts to Defendant to show by a

preponderance of the evidence that the adverse actions would have been taken

irrespective of Plaintiff's having engaged in a protected activity.  *Crawford-El v. Britton*,

523 U.S. 574, 593 (1998); *Nicholas*, 227 F.3d at 144.

In the instant matter, the Court finds that Plaintiff engaged in a protected activity by

filing a lawsuit seeking the return of his office to its previous locale.  *San Filippo v.*

*Bongiovanni*, 30 F.3d 424 (3d Cir. 1994) (identifying non-sham litigation as protected

activity).  Moreover, there is also sufficient evidence from which a reasonable fact-finder

could conclude that Plaintiff was subjected to adverse actions by Defendants Ragantesi,

Burda and Scrobola, namely:  (1) that Defendant Ragantesi intruded upon the privacy of

Plaintiff's desk; (2) that Defendant Scrobola subjected Plaintiff to surveillance in the

Borough Manager's office; (3) that Defendant Scrobola accused Plaintiff of stealing

checks from Karen Pokorny's desk; (4) that Defendant Scrobola accused Plaintiff of

writing a threatening letter; and (5) that Defendant Burda initiated criminal charges

against Plaintiff.  *See infra* pp. 3-5.  However, the Court finds that no reasonable fact-

finder could conclude that Defendant Scrobola's attempt to remove Plaintiff from office

when he reported as a victim to the Luzerne County District Attorney's Office constitutes

an adverse action.  There is no evidence that Plaintiff's removal from office was a

condition of his participation in the ARD program; nor is there any evidence that Plaintiff

was ever aware of Defendant Scrobola's attempt prior to the initiation of this action.

Finally, with respect to the issue of causation, the Court finds that there is

sufficient evidence from which a reasonable fact-finder could conclude that there is a

causal nexus between the filing of the lawsuit and each of the aforementioned adverse

actions.  It is well settled that evidence of a temporal proximity between the adverse

actions and the protected activity can suffice to establish causation.  *Farrell v. Planters

Life Savers Co.*, 206 F.3d 271, 279 (3d Cir. 2000).  Moreover, where there are a number

of incidents, the individual incidents must not be viewed in isolation.  Just as a "play

cannot be understood on the basis of some of its scenes but only on its entire

performance . . . [a First Amendment retaliation] analysis must concentrate not on

individual incidents, but on the overall scenario . . . ."  *Andrews v. City of Philadelphia,*
895 F.2d 1469 (3d Cir.1990) *(*quoting *Vance v. S. Bell Tel. & Tel. Co.,* 863 F.2d 1503,
1510 (11th Cir.1989)).

Here, the temporal proximity of the adverse incidents and the resolution of the
lawsuit in Plaintiff's favor is striking.  It is undisputed that on July 2, 2001, Luzerne County
Court of Common Pleas Judge Peter Olszewski, Jr. ordered the Borough to reinstate
Plaintiff's office to the Borough Building.  (Doc. 26 ¶ 31; Doc. 35 ¶ 31.)  Plaintiff submitted
evidence that on July 6, 2001, Defendant Scrobola made an accusation that Plaintiff stole
checks out of Karen Pokorny's desk.  (Doc. 28, Ex. 26 at 58.)  Plaintiff also submitted
evidence that shortly thereafter, Defendant Scrobola accused Plaintiff of sending him a
threatening letter.  (Doc. 28, Ex. 26 at 58-59.)  There is also evidence in the record that a
couple of days after the apparent theft of the checks from Karen Pokorny's desk, a
surveillance camera was installed.  (Doc. 28, Ex. 32 at 39.)  The video cassette tapes of
this surveillance reveal that the camera was trained only on Plaintiff's desk.  (Doc. 39,
Exs. 8-10.)  It is undisputed that on August 31, 2001, Defendant Ragantesi opened
Plaintiff's desk drawer and discovered a tape recorder.  (Doc. 26 ¶ 48-50; Doc. 35 ¶ 48-
50.)  It is also undisputed that as a result of the discovery of the recording device,
Defendant Burda initiated criminal charges against Plaintiff.  (Doc. 26 ¶ 61; Doc. 35 ¶ 61.)
In light of this evidence, a reasonable fact-finder could certainly that Defendants initiated
a pattern of harassment which began upon Plaintiff's successful prosecution of a lawsuit
against the Borough and culminated with the initiation of criminal charges against
Plaintiff.  The Court finds that a reasonable fact-finder could conclude that each of the

28

aforementioned adverse actions were perpetrated upon Plaintiff because of the lawsuit filed.

Defendants argue that each of the aforementioned adverse actions would have occurred irrespective of the filing of the lawsuit.  With respect to Defendant Burda, Defendants argue that he would have initiated the criminal proceedings notwithstanding Plaintiff's lawsuit.  As stated above, Defendant Burda had probable cause to initiate the criminal proceedings against Plaintiff.  *See infra* p. 13.  While it is certainly true that "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right," *Allah*, 229 F.3d at 235 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999)), Plaintiff has failed to submit evidence which calls into question Defendant Burda's proffered rationale for initiating the proceedings.  In light of the lack of a dispute on this material fact, the Court finds that the only conclusion a reasonable fact-finder could reach after reviewing the evidence in the record is that Defendant Burda would have initiated the criminal proceedings against Plaintiff even if he had not filed the lawsuit.  *See Hill v. City of Scranton*, 411 F.3d 118, 127 n.11 (3d Cir. 2005).  Therefore, the Court will grant Defendants' motion with respect to Plaintiff's retaliation claim against Defendant Burda.

With respect to the surveillance, Defendants argue that the purpose was to catch the individual responsible for the recent theft from Karen Pokorny's desk.  However, the evidence in the record clearly demonstrates that the camera was directly trained on Plaintiff's desk; not the door to the office nor Ms. Pokorny's desk.  (Doc. 39, Exs. 8-10.)

29

In regard to Defendant Ragantesi's conduct, as noted previously, Defendant Ragantesi has offered contradictory explanations.  (Doc. 26, Ex. 28 at 57-58.)  Consequently, the Court finds that a reasonable fact-finder could chose not to believe the proffered rationales of Defendants Ragantesi and Scrobola.  In addition, Defendants have not proffered explanations for the other adverse actions perpetrated upon Plaintiff. Accordingly, the Court finds that Plaintiff has submitted sufficient evidence from which a reasonable fact-finder could conclude that Defendants Ragantesi and Scrobola violated Plaintiff's First Amendment rights.

Having determined that the record contains evidence from which a reasonable fact-finder could conclude that Defendants Ragantesi and Scrobola violated Plaintiff's First Amendment rights by retaliating against him, the Court turns again to the question of whether said rights were clearly established.  As noted above, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Brosseau*, 125 S. Ct. at 599.  The Court finds that a reasonable official would certainly recognize the constitutional infirmity of engaging in a pattern of harassment as retaliation for filing a lawsuit.  *See infra* p. 24-26.  Accordingly, the Court finds that Defendants Ragantesi and Scrobola are not entitled to qualified immunity. Defendants' motion for summary judgment on Plaintiff's First Amendment retaliation claim will be denied with respect to Defendants Ragantesi and Scrobola.

**2)     Invasion of Privacy**

Defendants Ragantesi, Burda, and Scrobola argue that Plaintiff has failed to meet his burden with respect to Plaintiff's invasion of privacy claim brought under the laws of

the Commonwealth of Pennsylvania.  Plaintiff alleges that Defendants Ragantesi, Burda and Scrobola committed the privacy tort of intrusion into seclusion by installing the video surveillance camera and viewing the surveillance footage.

In order to succeed on a claim based on the tort of intrusion upon the seclusion of another, Plaintiff must submit evidence that "there was an intentional intrusion on the seclusion of [his] private concerns which was substantial and highly offensive to a reasonable person." *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 248 (Pa. 2002).  Unlike other privacy torts, proof of publication is not a required element. *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 621 (3d Cir. 1992) (citing *Harris v. Easton*, 483 A.2d 1377, 1383 (Pa. 1984)).  However, the intrusion must have been committed by a person, not merely a recording device.  *See Marks v. Bell Tel. Co. of Pa.*, 331 A.2d 424, 430-31 (Pa. 1975).

In the instant matter, Plaintiff has failed to submit evidence that there was an intrusion into his private concerns.  Although the Court found that Plaintiff had a reasonable expectation of privacy in the contents of his desk, *see infra* p. 21, the same cannot be said for the office itself.  The undisputed evidence is that many individuals including Karen Pokorny, various law enforcement officials, and other Borough employees enter the office on a regular basis.  *See infra* p. 2.  In light of the absence of an expectation of privacy in the office itself, Plaintiff cannot claim an intrusion into his seclusion as a result of the surveillance.  Consequently, the Court will grant Defendants' motion with respect to Plaintiff's invasion of privacy claim.

**3)    Abuse of Process**

Finally, Defendants Scrobola, Ragantesi and Burda argue that they are entitled to summary judgment on Plaintiff's abuse of process claim, also brought pursuant to the laws of the Commonwealth of Pennsylvania.  For Plaintiff to establish a claim of abuse of process, Pennsylvania law requires the convergence of three elements:  (1) proof that Defendants used a legal process against him; (2) that the use of the process was primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to him.  *Rosen v. Am. Bank*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993).  As noted by the Pennsylvania Superior Court, "The word 'process' as used in the tort of abuse of process 'has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process.'" *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (quoting *Nienstedt v. Wetzel*, 651 P.2d 876, 880 (Az. 1982)).

In the instant matter, the only evidence that Plaintiff has submitted in support of his abuse of process claim is Defendant Scrobola's request that Plaintiff be prohibited from serving in an elected office for a period of five years as part of his participation in the ARD program.  Defendants argue that this does not constitute "use of process."  The Court agrees.  Defendant Scrobola did not initiate the criminal proceedings; nor did he have the authority to dictate the final terms regarding Plaintiff's participation in the ARD program.  Consequently, the Court finds that Plaintiff's abuse of process claim fails as a matter of law.  Defendants' motion for summary judgment on this claim will be granted.

**CONCLUSION**

The Court finds that Defendants Borough and Borough Council are entitled to summary judgment on all of Plaintiff's federal claims because there is no evidence that the alleged constitutional violations occurred pursuant to a practice, policy or custom of the municipality. The Court also finds that Defendants Borough and Borough Council are entitled to summary judgment on Plaintiff's state law claims. The Court finds that Defendants Ragantesi, Burda and Scrobola are entitled to summary judgment on: (1) all claims brought against them in their official capacities; (2) Plaintiff's conspiracy claim brought pursuant to § 1985(1); (3) Plaintiff's malicious and retaliatory prosecution claims; (4) Plaintiff's illegal arrest claims; (5) Plaintiff's substantive due process claims; (6) Plaintiff's denial of access to the courts claim; and (7) Plaintiff's state law claims for invasion of privacy and abuse of process. In addition, the Court finds that Defendant Burda is entitled to summary judgment on Plaintiff's First Amendment retaliation claim. Finally, the Court finds that Defendant Scrobola is entitled to summary judgment on Plaintiff's illegal search claim.

An appropriate Order follows.


July 25, 2005                                  /s/ A. Richard Caputo
Date                                           A. Richard Caputo
                                               United States District Judge


33

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PAUL KONOPKA,

     Plaintiff,

        v.

BOROUGH OF WYOMING, COUNCIL
FOR BOROUGH OF WYOMING,
WILLIAM RAGANTESI, Individually and in
his Official Capacity as Assistant Chief of
Police for the Borough of Wyoming, ALEX
BURDA, Individually and in his Official
Capacity as Police Officer for the Borough
of Wyoming, CHRISTOPHER
MERCAVICH, Individually and in his
Official Capacity as Police Officer for the
Borough of Wyoming, JOSEPH
SCROBOLA, Individually and in his
Official Capacity as Councilman for the
Borough of Wyoming, and JOSEPH
SCROBOLA, t/d/b/a TS ALARM
COMPANY,

     Defendants.

CIVIL ACTION NO. 3:03-CV-894

(JUDGE CAPUTO)

## ORDER

**NOW**, this _25th_ day of July, 2005, **IT IS HEREBY ORDERED** that Defendants'

Motion For Summary Judgment is **GRANTED in part** and **DENIED in part:**

    (1)    Defendants' motion is **GRANTED** insofar as it seeks summary judgment
          with respect to:

          (a)    Plaintiff's conspiracy claim brought pursuant to 42 U.S.C. § 1985(1).

          (b)    Plaintiff's § 1983 claims against Defendants Borough of Wyoming
               and Council for the Borough of Wyoming.

     (c)     Plaintiff's § 1983 claims against Defendants in their official capacities.

     (d)     Plaintiff's malicious and retaliatory prosecution claims.

     (e)     Plaintiff's illegal arrest claims.

     (f)     Plaintiff's substantive due process claims.

     (g)     Plaintiff's illegal search claim against Defendant Scrobola.

     (h)     Plaintiff's First Amendment retaliation claim against Defendant Burda.

     (i)     Plaintiff's denial of access to the courts claim.

     (j)     Plaintiff's state law claims for:

          (i)     Invasion of privacy; and

          (ii)     Abuse of process.

(2)     Defendants' motion is **DENIED** with respect to:

     (a)     Plaintiff's illegal search claims against Defendants Ragantesi and Burda; and

     (b)     Plaintiff's First Amendment retaliation claims against Defendants Ragantesi and Scrobola.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge